16-1006 People of the state of Illinois, defendant Anthony B. Brown, defendant of the felony. On behalf of the defendant's family, Mr. Jonathan S. Brayman. On behalf of the defendant's family, Mr. Al Frederick. Mr. Brayman, you may proceed. Thank you, Your Honor. Good afternoon, Your Honors. May it please the Court. My name is John Brayman, and I represent defendant appellant Antwon Brown in his appeal before this Court. We're in this Court asking Your Honors to do what the trial court did not do, apply the framework of Hampton, this Court's 2005 opinion, to the facts of this constructive possession case. In this case, the uncontroverted facts at trial established that on February 4, 2012, that defendant Antwon Brown was found badly injured in a vehicle that had gone off the highway and plummeted into a ditch. That debris from the vehicle was everywhere, both inside and outside the vehicle. That the vehicle was totaled, that it had flipped over after going nose up on the highway. The vehicle's registration came back to someone other than defendant Antwon Brown, and Mr. Brown was extracted from the vehicle after the jaws of life were used to take both doors off the driver's side of the vehicle. That vehicle was then... Counsel, even if the inference from Hampton isn't available to the State, we still look at the Bailey factors, correct? Absolutely, Judge. So, if this bag of powder was... When the defendant was driving the car, if it was where it was located when the car came to rest, I mean, that would be certainly some evidence of its visibility and the ability of the defendant to view it and know where it was based on the trial court's rulings regarding the priors, correct? Correct, Judge, if those were the facts that the trial court heard. Actually, the trial court made findings that it believed that the narcotics were secreted in the vehicle somewhere, either in the floorboard or maybe in the back of the vehicle. But because of the nature of the accident that the vehicle was involved in, that the court could not say that that's where the narcotics actually were at the time that Mr. Brown was traveling in the vehicle. They encountered a very intoxicated man who, at the time, was asked by Master Sergeant Hart whether there were any other occupants in the vehicle. He said no. Other than that, there were no statements by the defendant. The narcotics had been sent out for testing that came back negative for his fingerprints. And so, yes, Judge, if the facts were such that Mr. Brown had the narcotics at his feet at the time that he was traveling in that vehicle, certainly the Bailey factors would suggest that those weighed in favor of the state. But because of the facts, in this case the circumstances of the crash that the vehicle had flipped over multiple times, that the contents of the vehicle had become altered, that they had shifted in the vehicle, and also the vehicle sustaining such catastrophic damage, wheels off, completely totaled, that the court did not believe that that was the scenario that you present here, that the item of narcotics was at Defendant Brown's feet at the time that he traveled in the vehicle. What's the importance of the defendant's prior convictions that the trial court allowed in? And that's not discussed in your brief, but isn't that evidence of knowledge, of the defendant's prior convictions for possession with intent to deliver heroin? Doesn't that go to the defendant's knowledge? It does not because, actually, the trial court's ruling was confined to whether, if there was a defense that perhaps the factual scenario that Justice Burke lays out, that Defendant Brown was traveling in the vehicle with the contraband at his feet, that if there was a defense that said, well, yeah, you know, I saw that at my feet, but I didn't know what it was, the trial court's ruling on the 404 motion. What defense was there? The defense was a sufficiency of evidence, although... And doesn't the defendant's prior possession with intent to deliver that conviction go to the issue of the defendant's knowledge? Judge, when we review the verdict, we take all the evidence and consider it in the light that's most favorable to the people, though, do we not? Yes, Judge, and I think the factual findings here on review were that the trial court confined its ruling to a defense that was not presented. It was a sufficiency of the evidence defense and the knowledge. Well, the court said if it goes to his knowledge, he knows what heroin looks like. He does, but that does not give the inference that he knew the heroin was in the vehicle because of both the factors that Hampton and Bailey before it had laid out in terms of when we're dealing with a vehicle that's registered to another person, we cannot presume knowledge and we cannot presume regular and ongoing control of all the contents of the vehicle. The factual scenario here is very similar to Hampton and Bailey, where in Hampton the vehicle owner was the deceased brother of the defendant and the only evidence available to the jury in that case was that the defendant was in possession of that vehicle for perhaps a few minutes. And in this case, we have testimony from a civilian witness by the name of Gregory Baltz who testified that he observed the vehicle that crashed in which Mr. Brown was found for a period of about four or five miles. So other than that, there was no evidence that Mr. Brown had ongoing regular control of the vehicle. There was no evidence to connect Mr. Brown to the registered owner of that vehicle. Similar to the scenario in Bailey where the court, the third district, talked about the state failing to connect the defendant in any affirmative way because it's not the defendant's burden to put on that defense that they haven't connected me to the vehicle through a defendant's own testimony or other witnesses, but that the state had failed to link the registered owner to the defendant in any way. In their discovery, did the state list the registered owner as a witness in the case? They didn't. Did anybody try to track down the owner? Judge, I was not counsel of record until... But from your review of the record in the case, no apparent effort to contact the registered owner? I saw no subpoenas in the file that are in the common law record. They were all as to law enforcement and lab personnel and Mr. Baltz. So in terms of analyzing this case in the view of Bailey, the state has an affirmative obligation to link the defendant to the registered owner of the vehicle to show ongoing and regular control. This is not a case where Mr. Brown is found in his home and narcotics are found secreted in some area. That's a different situation where you deal with a defendant who's a homeowner where you can presume that a homeowner has regular and ongoing control over all the contents of their home and from that you can infer knowledge. In a vehicle situation, it's different. And the Bailey court talks about the distinction between residence cases and vehicle cases. And in vehicles, traditionally, if you look at the cases, it's an unfair inference to find knowledge or to infer knowledge where the operator of the vehicle is not the registered owner and the contraband is concealed somewhere, hidden somewhere in the vehicle. Here it wasn't hidden. Perhaps it may have been hidden under a seat, but it was not in some secret compartment, correct? It wasn't in any type of secret compartment. But it could have rolled out, and that's your theory. Judge, that was the trial court's finding of fact after that had been proposed by the defense at the trial level. And I think it's consistent with the evidence and the circumstances of the accident that occurred in this case. But when we talk about secret compartments and secreting things in a vehicle, in Hampton we had a handgun, an item that would be similar in size or larger than the contraband in this case. And it was in a glove compartment, not a secret compartment, but in a glove compartment. And the court there talked about, and Bailey talked about, that even if you find items that link the defendant to that vehicle, like there was items of potentially Hampton's deceased brother or his father or his brother or him in the vehicle, there was items there. And just because the court said that potentially you could link those items to the defendant, it doesn't show ongoing and regular control over all of the contents of the vehicle. And in this case we have a scenario where defendant Brown was found in a vehicle that's crashed. The only statements that he make connecting him to the charges and the indictment was that he's the sole occupant of the vehicle at the time that Master Sergeant Hart encounters him. There's no fingerprint evidence, and the car is wrecked. The contents are strewn throughout the side of the highway, throughout the passenger compartment. And in terms of the evidence and its state at trial, I think what the record suggests is that the contents of the vehicle morphed or changed a couple of different times. First, on February 4, 2012, as a result of the traffic accident. And that's what the photographs show that Trooper Bamfy took. Then after Trooper Bamfy and Master Sergeant Hart are on the scene of this vehicle crash, that vehicle is driven down a highway on a flatbed tow truck with the doors of the vehicle missing. And that is left at a private tow lot with a law enforcement hold on it for a period of 12 days. So when you look at the photographic evidence, I urge the court to take a look at all the photographs that are in the Commonwealth Record. They show the nature of the crash in this case, as well as two photographs. Even putting sufficiency aside for the moment, the chain of custody in this case is very troubled. That in an item of utmost evidentiary value, the actual narcotics in this case were left unsecured in a private tow yard for 12 days. And actually, the two photographs in the record, the Commonwealth Record 278 and 282, which are people's exhibit, trial exhibits 33 and 37, show the same vantage and actually show the contents of that floorboard area and driver's seat having changed. That there's no broken glass anymore inside the vehicle in exhibit 37, which is taken 12 days after the crash at the tow lot. There's no compact disc present in exhibit 37. And unlike in exhibit 33, you can actually see a knot of the baggie that forms the corpus delicti of the offense here. You would agree from the time that the substance is seized at the tow lot until trial, there was a chain of custody for that, correct? There was. So the issue is whether or not that substance has been seized by the police, correct? It was, but there was testimony that said that at that point in time, that vehicle had been seized and it was under investigation, there was a law enforcement hold on it, and that it was towed from the scene of the crash to the tow yard and placed in a law enforcement section of the privately owned tow yard. But in terms of the chain of custody between February 4, 2012, and the 16th, 12 days later, that vehicle and its contents sit in a tow yard that is not a warehouse. It's fenced in and accessible to tow truck drivers, to motorists that are going to collect their belongings or their vehicles. And there had been trespassers and thefts committed in the tow yard. Yes, Your Honor, and that was going to be my next point, was that actually they had had occasions, Mr. Spalding testified, of trespassers and thefts. And if you put those facts next to the facts of Mormon or Brown, where actually evidence sits in a law enforcement office for a period of nine days, there was in one of those cases, a period of nine days where there was a narcotics evidence, containing purported narcotics sat on a chemist's desk or a police officer's desk for a period of nine days. The court found that troubling enough, because it was left unsecured, to say that that evidence was inadmissible and reverse the conviction on that basis. And we have a situation here where it's actually not even, it's subject to civilian tampering, whether it be tow truck drivers or trespassers at that lot. And in terms of actually the photographic evidence, it's even more troubling that it appears, it appears that the contents of that section of the vehicle have been altered, that the glass, the broken glass is actually no longer present, a compact disk is no longer present, and the item that is the purported narcotics in this case is different in composition and color, and you can actually observe in the later photograph on February 16th the knot of the baggy, which previously could not. So, Judge, we're asking for this court to apply Hampton and Bailey and reverse Mr. Brown's convictions. And with respect to the defendant's priors, you believe that we should limit our consideration of that, the prior convictions, to what the trial court considered it for, just that the defendant knew what heroin looked like and nothing more? I do, but I don't think the facts substantially that he had knowledge under the law of Hampton and Bailey. So for both of those reasons, I would say that the priors, they were narrowly confined to an absence of mistake or that he knew what heroin would look like if, in fact, the State had established knowledge and ongoing regular control of that vehicle and its contents. Thank you, Mr. Brayman. You'll have an opportunity to make rebuttal. Mr. Trejo? You may proceed. May it please the Court, Counsel, my name is Adam Trejo on behalf of the people of the State of Illinois. Defendant contends that the evidence was unable to prove that he had knowledge of the heroin inside the SUV. However, there are three important factors that establish the reasonable inference that he knew that heroin was inside the SUV on the day of the crash. The first factor is that he's the sole occupant. He clearly has control of this vehicle. Unlike Bailey, which defendant relies on, in that case, defendant wasn't the sole occupant of the vehicle. He wasn't even the driver. He was a passenger. The second factor to consider is the bulky size of the bag. This isn't a small baggie that can fly off and hide in crevices of the vehicle. This bag contains 196 grams of heroin. It's a big size. Are you saying it wouldn't fit underneath the seat? Was it the size of the baggie that it wouldn't fit underneath the seat? Based on the photographs, it could. It could fit under the seat if you jam it in. Anything could fit under a seat, but that's not where it was found. What was the street value? Unfortunately, that wasn't made clear in the record, only that it was 196 grams. But the thing is, the size, it's noticeable. It's not something that you can easily overlook. It's not a small baggie. And the third and final factor is the placement of the bag. At the scene of the accident, when police arrived, they saw it. The photographer, Trooper Baffney, she photographed it. She saw it laying on the floorboard of the driver's seat. Now, it wasn't found in the trunk. It wasn't found in the backseat. It wasn't found in the passenger side area. It wasn't even in the compartment. It was on the floorboard. And the lens that this court is being asked to view this issue is, is the evidence so improbable and unsatisfactory? And the answer is no. Those three factors are enough to establish the reasonable inference that the defendant noticed and saw the bag of heroin within the driver's seat, this vicinity. Does human experience teach us that people who are transporting 200 grams of heroin generally have it on the floor by their feet where they're pressing pedals? A reasonable person, an individual not under the influence of alcohol, may have put it in a more secure area. But this individual was intoxicated, and maybe he didn't use the best judgment. He was speeding. Unfortunately, in the trial court record, we don't know the reasons why he was speeding. We don't know why he was inebriated, just that he wasn't exercising good judgment, obviously. He ended up crashing. So an individual in a rush, he's speeding. He may have just placed it on his lap. He may have placed it in the console right beside him. But the bag is in the area of his vicinity. And these three factors establish that reasonable inference. It's enough to satisfy the lens for which we're viewing this issue. When we talk about inferences, the Hampton case kind of defines for us how to look at these inferences when we're talking about driving a car that doesn't belong to the person, whether the sole occupant, Hampton, was the sole occupant in the car. And there's two factors. I mean, one was a common human experience teaches us that it's not accounted for usually in that place, which the trial court seemed to kind of focus on, correct? Yeah. But then there's the other one, which is regular ongoing control, which is what knocked out Hampton and which is what the defendant is arguing here. Well, in Hampton, the gun was found in a tube sock inside the glove compartment. It's in a contained area. If the bag of heroin was in a contained area, it wouldn't have been so easily spilled to the floor. That's the main distinction between Hampton and this case. The gun is in a glove compartment. If a crash occurs, it's going to stay in that glove compartment. If there was evidence that this bag was under the seat when the defendant was driving, if you lose? Not necessarily, because as previously stated, he could have placed it there in a hurry. The bag, there's no dents within the bag when it's found that looks like. There's no indentation. You know, under a car seat, you have to press a lever to move it. There's no indentation marks of that mechanism under the car on the bag. It does not look like it's been forced under there. Let's talk about the chain of custody when we're speaking about the bag. What's the excuse for not retrieving the bag and having it inventory during that 12-year or 12-day period while it's set in the tow lot? Well, the defendant argues that the trial court abused its discretion. This is the standard of review, and the court abused its discretion in establishing that the people did establish a chain of custody. And although it's not ideal 12 days, the heroin was authenticated by the officer who photographed the scene. She went to the impound lot and stated, it's right in a similar spot from when I initially observed it. But most importantly, there's security measures in the impound lot. The vehicle, the SUV, was stored in an area that is limited to other law enforcement. It's with other vehicles, presumably, that's for law enforcement purposes. It's not placed with other vehicles where civilians have access to it. Are the people that operate the tow vehicles law enforcement officers, the people that bring vehicles in and move them out of the tow lot? From my understanding, it's the employees of Dennis Spaulding that work at the SUV. Nothing in the record indicates that the background measures taken to work at this employment. However, there's cameras on the impound lot. It is secure. The six-foot fence, it's not see-through. Yes, there was testimony at the trial level indicating that trespassers had entered the impound lot. But it's highly unlikely that a trespasser is going to go over a fence that's not see-through and in place. The standard under the case law is reasonable protective measures, and the state has to show reasonable protective measures. Are you saying that, realistically, by your argument, that the state police can store all their cocaine in these park cars? No, that's where it was found. But I'm just saying, in that 12 days, in an impound lot that has this limited access, I mean, if the police stored all their cocaine that they seized there, it'd be okay. No, no, that wouldn't. Well, then why is it reasonable here? Because of the facts. Because the police had to get a search warrant to go into the vehicle. It had to be towed. It's by the nature of the accident. Unfortunately, the vehicle couldn't have gotten taken back to the police station. It's a huge vehicle. It's just improbable to collect all the evidence, especially without a search warrant, given the nature of the heroin. If they suspected it was contraband, they didn't need a search warrant. Well, at that time, at that time, Chief Bethany noticed it. She photographed it. And it's a very chaotic scene. There's helicopters trying to get the defendants out of the vehicle. The state police has inventory policies as well, don't they? I do. Unfortunately, I'm not familiar with them. Most police departments in the state of Illinois, including the Illinois State Police, had, we could take judicial notice that, from other cases, that inventory policies exist in all police departments. This is correct. This is correct. And I don't know if it's normally 12 days or less than 12 days. But Chief Bethany identified the bag. She wasn't sure what it was. She told Officer Hart, look, there's a bag. He denies hearing this. So she's the only one who identified it before it was towed away. Again, the record isn't clear how she informed the other officers that this bag may contain contraband. But there is evidence to suggest that she identified the bag but didn't really know what was in it until maybe afterwards. Counsel, these are photographs that were admitted into evidence. What exhibits are those, Your Honor? I believe 33, 37, and 37. 37. Yes. I'm looking at the two pictures, and I don't see anything other than the bag that seems to be in where it normally would be. How is it that the bag is the only thing that, per chance, is in the place where the defendant may have seen it when everything else is akimbo, skewed, akimbo, spread all over the place? How is it that this one item seems to be unaffected by the forces of physics? Well, part of it goes to the weight. It's roughly 7 ounces, 6.9. It's definitely heavier than a disc or a broken glass. It is heavier than the other items that are not located in People's Exhibit 37. Of course, things get shipped around when you're moving an entire vehicle from the scene of an accident to an impound lot. I highly doubt that it was physically moved. But, again, since the disc is not on People's Exhibit 37 or the glass, it ships. Well, it doesn't look like it's on carpeting or a rubber floor mat. So either it's on some sort of fibrous material that isn't normally located in a driver compartment, or it is sitting on something that it wasn't sitting on prior to the accident. The people do acknowledge that items have been shifted. However, the trial judge found, again, the lenses of use of discretion. The judge heard testimony from Trooper Baffney, who's the only individual who saw that bag in its place at the time of the accident, and she saw that same bag in roughly the same location at the impound lot, and the trial judge found her testimony credible. Was Brown wrongly decided? That's where the alcohol was put in the policeman's locker. And I'm sure the police officer would testify that, well, that bottle's still in the same spot I put it in when I put it in there two weeks ago before they brought it to court. And that's a police locker that was locked. I would be happy to write a memo on Brown on destroying blanks on that case. I mean, counsel cited that it's the one with the whiskey bottle in the officer's locker. The fact that the photographer saw the item located in the same place doesn't explain how its location appears to be on top of things that it wouldn't normally be on top of if there hadn't been an accident. Right. And the only possible explanation is that things shift and... The only other possible explanation is it wasn't there prior to the flipping of the car. Now, it's possible that it was there. And in the mix, things, it was thrown up into the air, bounced around. The floorboards were torn up and the fibrous matting and the focal matting and whatever were ripped asunder. And then it, per chance, just landed exactly right back where it was before. Although there were reported trespassers, Dennis Spaulding didn't testify that he had identified trespassers at the impound lot that moved anything. There was no reported thefts during that 12 days while... Where was the defendant found in the vehicle? He was found in the driver's side. He was sitting down and the doors had to be removed to get him out, but he was on the driver's side. And moving on to the third issue, just on time limits. Defendant's third contention is that the defendant entered into a waiver. However, it was made unknowingly and unintelligently because it was made 17 months before the commencement of the bench trial. The defendant never filed a motion to withdraw the jury waiver at any point prior to the commencement of the bench trial. A trial court cannot err and a trial court cannot allow a defendant to take an action when the defendant doesn't request it. Furthermore, five months before the commencement of the bench trial, the trial court had indicated that prior counsel, because he received new representation, his prior counsel received an illness and resigned. The trial court indicated that a trial, a bench trial has been set by defendant's prior counsel. And at this hearing, which occurred on July 16th, 2015, and it's found in the record 136 through page 138, the defendant nor the defendant's attorney never said anything about the bench trial. They never spoke up and stated, I would like to file a motion to withdraw the jury waiver. What this case is, it's a case of buyer's remorse. Hindsight is 20. Your opposing counsel is asking questions about the use of the defendant's prior convictions and the use of those prior convictions. I know you didn't write the original brief, and you're filling in for the person who wrote the original brief, and we appreciate that. But that wasn't raised at all as evidence of knowledge, evidence of the defendant's knowledge of the presence of the drugs in the car, correct? That is correct, from my recollection. Is that because the ruling was so specific from the trial judge, or do you know why? I cannot recall it at this moment. The prosecutor argued that it should be received for purposes of intent, knowledge, or any other proper purpose, correct? That was the argument. But the trial court limited it to just absence of mistake and the fact that the defendant knew what cocaine looked like. So how does that support your argument that the evidence was sufficient? Well, inside the bank, he knows how they're packaged. He's seen it. He knows what heroin is. He's been convicted of it. When he sees a big baggie, most likely he's going to know how it's packaged and processed. And absent more time, the people respectfully request this honorable court to affirm defendant's conviction and sentence. I have a question. Yes. Can you rationalize or explain why the state didn't bring in the registered owner to testify as to any familiarity connection or other acknowledged connection between the defendant and the registered owner? Well, the registered owner, C.H., she was identified through documents. However, why the people at the trial level never asked her to testify is beyond my knowledge. Under these circumstances, doesn't that in and of itself create a serious question about the defendant's knowledge? No. The trial court held that it is unreasonable for an individual to lend a car to somebody else with 196 grams of heroin in it without them knowing that it's there. It's reckless. It's I don't know the street value of these drugs. I'm assuming it's over 100K, assuming no one's going to let someone drive their vehicle without them knowing that the drugs are in that car. Thank you. Thank you. Mr. Brayman, you may proceed. Thank you, Your Honor. In terms of this reference just now and the one that was made at the trial level that the defendant was the permissive user of that vehicle, there is no competent evidence in the trial record to support that finding of fact at the trial level or that argument here. The State had the opportunity and well knew that the registered owner was not Defendant Brown at the time they applied for the search warrant. The application for the search warrant lists the registered owner, and that was made back in February 16th of 2012. If that car came back to a different individual other than Defendant Brown, that individual was listed on the State's answer to discovery, and they had a period of three or four years to bring that person in, to subject that person to interviews, and elicit that testimony at trial. The factual scenario here where there's a lack of that evidence places it in stark contrast to Givens, which is a case the State relies on in their briefs. The State does not cite Hampton or Bailey or analyze those cases in any way, although that is the precedent that the trial court needed to analyze this case under, and which this Court of Review also analyzes the case. They did cite Givens, which is a case where two individuals are found in an apartment, contraband is in plain view, there are overnight guests there, and the leaseholder comes in and testifies that she did not put that contraband there, and so that testimony is elicited. Conversely, like in Bailey and in our factual scenario, there's the lack of that evidence. So that inference that Defendant Brown is the permissive user of this vehicle, there's no evidence to support that. Also, as to I think Justice McClaren's question about where Antwon Brown was found in the vehicle, he's actually found not in the driver's seat, and this is on page four of my opening brief. The trooper, who is Master Sergeant Hart, encountered a single male inside the vehicle sitting in the front passenger seat, with his back to the passenger side door and his legs toward the driver's seat. He's actually located in the passenger seat, his legs are on the driver's seat. Also, in terms of this argument that the trial court could, although it did not, use Defendant Brown's prior convictions for the purposes other than absence of mistake or knowledge of what it looked like, that argument here is waived. It was available to the State in their response brief, and it was never. Well, you didn't put it in your factual, your background section either, in your facts, in your brief. I apologize if I did not. It's an important fact that that came in. It was at the end of the case, but nevertheless, it still came in. It was shortly before trial, I think I brought it up in my brief, in terms of that jury waiver issue, because the jury waiver issue, I don't think the court needs to reach, because I think this case under Hampton requires absolute outright reversal. And so I don't think the court reaches the jury waiver issue in terms of a new trial. But the jury waiver issue is interesting because it happened 17 months prior with a counsel that was quite ill and elderly and came in and executed jury waiver with Mr. Brown the day after he moved to continue the jury trial date. So, and then also as to Justice Burkett's point, there was things that happened that would affect a defendant's right to exercise the fundamental right to a jury trial, including the rulings on the motions eliminated, which had to do with the chain of custody issue, which is a very paramount issue here, and the issue as to the use of defendant's criminal background and what purposes it could have at trial. Counsel, your conclusion contains a prayer for relief, either reversing the conviction outright, vacating the felony conviction, remaining for a new trial, and or granting any other equitable and appropriate relief. If you are dropping the written jury demand, are you still claiming that one of the forms of relief is vacating the felony conviction? Or are you suggesting now that there should be a conviction outright? And is that based upon the lack of reasonable doubt or based upon the fact that the chain of custody relative to the contraband was not only not perfected, but cannot be perfected? Let me clarify. We are asserting that the jury waiver was defective. So we're not withdrawing the issue, but I'm submitting that this court does not need to reach the issue because the factual scenario here in terms of the sufficiency of the evidence to prove Mr. Brown had ongoing regular control of that vehicle and that he had knowledge of the presence of the narcotics in it, along with the chain of custody issue, requires outright reversal. And I think that the court has talked about some of the troubling aspects as to the chain of custody. But even if we put that issue completely to the side and analyze this case as if at the time on February 4, 2012, that evening, that area had been cordoned off and they either got a search warrant or they searched the car, pursuant to an inventory search, that still, without the problematic chain of custody, this case requires outright reversal under Hampton. So that is the relief we're asking for. But certainly, we put that in the prayer for relief to allow the court its supervisory powers. Any other questions? Thank you. The case will be taken under advisement. Court is adjourned.